IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| XMS CAPITAL PARTNERS, LLC, | ) | |
| | ) | |
| Opposer, | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| XLS PARTNERS, INC. | ) | |
| | ) | |
| Applicant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff XMS Capital Partners, LLC, through its undersigned attorneys, for its Complaint against Defendant XLS Partners, Inc., herewith alleges as follows:

### NATURE AND STATUTORY BASIS OF ACTION

1. This is an action for service mark infringement under 15 U.S.C. §§ 1114 and 1125(a), for cybersquatting and cyberpiracy under 15 U.S.C. § 1125(d), for violation of the State of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510, and for unfair competition under Illinois common law.

### THE PARTIES

2. Plaintiff XMS Capital Partners, LLC ("XMS") is a Delaware limited liability company having its principal place of business at 321 North Clark Street, Suite 2440, Chicago, Illinois 60654. XMS is the exclusive owner of all right, title and interest in and to United States Service Mark Registration No. 5,108,388 for the mark XMS CAPITAL (disclaiming "CAPITAL") ("the XMS Registration"). XMS is also the exclusive owner of all right, title and interest in and to a number of unregistered service marks, as set forth in Paragraph 10 hereinbelow.

3. XMS has been in the business of providing financial advisory services in the fields of mergers and acquisitions, corporate finance, capital markets and restructuring for twelve years, with XMS's founders each having over thirty years of experience in this field. During those twelve years, XMS has established itself as a leading global financial services firm.

4. On information and belief, Defendant XLS Partners Inc. ("XLS") is an Illinois corporation having its principal place of business at 770 Beacon Street, Suite A, West Dundee, Illinois 60118, together with a Chicago office at 150 N. Wacker Dr., Suite 3025, Chicago, Illinois 60606. On information and belief, XLS offers similar and related financial advisory services, including consultation in the fields of business mergers and acquisitions, financial advising in the field of mergers and acquisitions, and investment banking services.

## JURISDICTION AND VENUE

5. Jurisdiction over this Complaint is expressly conferred on this Court pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338 and 1367.

6. On information and belief, XLS is doing business in the State of Illinois, because it is an Illinois-based corporation, and because XLS has an office located in, and offers its services to residents and other businesses within, the State of Illinois.

7. On information and belief, personal jurisdiction over XLS is vested with this Court pursuant to one or more subsections of 735 ILCS 5/2-209(a)-(c).

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1)-(3).

## XMS'S BUSINESS AND SERVICE MARKS

9. XMS was first established in August 2006 with the goal of creating a different kind of investment banking boutique, in which relationships are paramount over transactional velocity. XMS aims to render long-term investment advice to clients across their critical strategic and financial areas of concern. Since 2006, XMS has grown into a global, independent

financial services firm, providing investment banking, asset management and merchant banking services to its clients. XMS now has offices in Chicago, London and Dublin, with strategic relationships in Germany, Japan, China and India.

10. As noted above, XMS is the exclusive owner of all right, title and interest in and to the XMS Registration. XMS is also the exclusive owner of all right, title and interest in and to a number of unregistered service marks, including the word mark XMS, the word mark XMS CAPITAL PARTNERS, and the XMS CAPITAL PARTNERS Logo mark shown below:



11. XMS uses the XMS, XMS CAPITAL, and XMS CAPITAL PARTNERS Logo marks (collectively the "XMS Marks") in association with the provision of capital investment and capital investment consulting, corporate finance services, namely, consultation in the field of capital structure, financial restructuring services, strategic corporate financial advisory services, and venture capital advisory services, together with investment banking, asset management and strategic consulting in the fields of mergers and acquisitions, corporate finance, capital markets and restructuring (collectively, the "XMS Services").

12. The XMS Registration was filed on April 26, 2016 and registered on December 27, 2016, for "Capital investment; capital investment consulting; Corporate finance services, namely, consultation in the field of capital structure; Consultancy of capital investment; financial restructuring services; Strategic corporate financial advisory services; Venture capital advisory services" in Class 36. A copy of the XMS Registration is attached hereto as Exhibit A. The

XMS Registration claims a date of first use for the XMS CAPITAL mark since at least as early as June 2007. *See* Exhibit A.

13. The XMS Registration is valid, subsisting, in full force and effect. The XMS Registration certificate attached as Exhibit A is prima facie evidence of the validity of the XMS CAPITAL mark, as well as XMS's ownership and exclusive right to use that mark in connection with the identified services. 15 U.S.C. § 1057(b).

14. XMS has invested considerable money, time, and effort into the development of the XMS Marks for use in connection with the XMS Services. The XMS Marks have become assets of immense value for XMS, and for customers and potential customers of the XMS Services, serve as immediately recognizable and well-known indicators of source of the company's high-quality services. By way of XMS's extensive advertising, promotion and sale of the XMS Services, under the XMS Marks, XMS has developed enormous goodwill in the XMS Marks.

15. XMS and its services have been featured in articles from leading financial news sources, such as the Wall Street Journal and Bloomberg News. One recent article featuring XMS in Bloomberg from September 2017 credited XMS with advising billionaire investor Carl Icahn and his company in association with the sale of an engine parts business out of Federal Mogul. The April 2018 press release of Icahn Enterprises confirmed XMS's role as its exclusive financial advisor in the sale of the entire Federal Mogul business to Tenneco—for $5.4 billion. Copies of the Bloomberg article and the Icahn Enterprises press release are attached hereto as Exhibit B.

16. In addition to its XMS Registration and its common law rights in its XMS Marks, XMS operates a website at <xmscapital.com>, through which it advertises its services, and explains its services as follows:

> We provide tailored advice on mergers, acquisitions, divestitures, debt and equity alternatives, restructurings, valuation shareholder value and capital structure to companies and institutions across the globe.

A copy of an XMS website screen is attached as Exhibit C. The same webpage explains that XMS offers "advice based on a broad set of *investment banking capabilities* developed through an established track record of advisory experience," and summarizes XMS' financial advisory services in the fields of mergers and acquisitions, corporate finance, capital markets and restructuring. *See* Exhibit C.

17. The XMS website also prominently features a composite word and design mark—the XMS CAPITAL PARTNERS Logo mark noted above, where the identity acronym "XMS" appears directly above the word "PARTNERS," as shown below:



**XLS'S INFRINGEMENT OF XMS'S SERVICE MARK RIGHTS & CYBERPIRACY**

18. On February 28, 2018, Defendant (XLS Partners, Inc) filed U.S. Service Mark Application Serial No. 87/814,479 (the "XLS Application") seeking registration of the mark XLS, for "business acquisition and merger consultation" in International Class 35, and for "investment banking services; financial advising in the field of mergers and acquisitions" in International Class 36 (collectively, the "XLS Services"), as indicated by its publication in the August 14, 2018 *Official Gazette*.

5

19. Despite that filing in February 2018, however, XLS Partners, Inc. did not exist as an Illinois corporation at that time. Rather, the entity now known as XLS Partners, Inc. (an Illinois corporation) did not exist until May 3, 2018—when the corporation's name was changed from CFA Chicago, Ltd. to XLS Partners, Inc.

20. On June 20, 2018, Defendant filed an Amendment to Allege Use with the United States Patent & Trademark Office (USPTO), together with specimens of use comprising Defendant's website. Like XMS's website, Defendant's website highlights Defendant's advisory services relative specifically to mergers and acquisitions, divestitures, structuring deals, debt and equity alternatives, and investment banking.

21. Defendant's Amendment to Allege Use claimed a date of first use for the XLS mark of June 1, 2018. After the USPTO accepted the Amendment to Allege Use, as of July 25, 2018, the XLS Application was slated to publish for opposition in the *Official Gazette* on August 14, 2018.

22. On July 26, 2018, the undersigned counsel for Plaintiff sent a demand letter to the Chairman and Managing Partner of Defendant XLS Partners, Inc., Robert Contaldo, regarding Plaintiff's service mark rights in the XMS and XMS CAPITAL marks, and Plaintiff's concerns regarding the likelihood of consumer confusion between XMS and XLS—including a discussion of instances of actual confusion that had already occurred in the marketplace. *See* Exhibit D. The letter demanded, among other things, that Defendant cease using the marks XLS and XLS PARTNERS, voluntarily abandon the XLS Application, and assign the domain name <xlspartners.com> to Plaintiff. *Id*. The letter also informed Defendant that Plaintiff was aware of the XLS Application and its upcoming publication date, and intended to file a Notice of Opposition against that application—if the dispute was not resolved. *Id*.

6

23.     The XLS Application published for opposition on August 14, 2018.

24.     On August 17, 2018, counsel for Defendant sent the undersigned counsel for Plaintiff a response letter denying that Defendant's use of the mark XLS, and that its XLS Application, was likely to result in confusion with Plaintiff's service mark rights in the XMS Marks.

25.     On August 30, 2018, Plaintiff filed a Notice of Opposition with the Trademark Trial & Appeal Board (TTAB) of the USPTO. That same day, the TTAB issued an Order instituting the opposition proceeding, and setting the deadline for Defendant's Answer to the Notice of Opposition on October 9, 2018.

26.     On August 31, 2018, the undersigned counsel for Plaintiff sent a follow-up demand letter to counsel for Defendant attaching a copy of the Notice of Opposition, as filed, and reiterating Plaintiff's demand that Defendant cease using the XLS mark and abandon the XLS Application. *See* Exhibit E. In addition, the letter expressly identified a number of different, alternative marks that Defendant could use, without objection by Plaintiff, to render confusion less likely between Plaintiff's and Defendant's respective marks. *Id*. Specifically, since Defendant had explained in its advertising that its name was intended to evoke the Latin term "Excelsis" (sometimes pronounced in English as "Excelsius"), Plaintiff suggested that Defendant use the acronyms XLCS or XLSIS, amongst others, instead of the mark XLS. *Id*.

27.     On October 8, 2018, Defendant submitted to the TTAB a document expressly withdrawing the XLS Application. That same day, Defendant's counsel emailed counsel for Plaintiff regarding its withdrawal of the XLS Application, and attached a letter notifying Plaintiff that (1) Defendant had filed a new service mark application, U.S. Service Mark Application Serial No. 88/147,033 for the mark "XLCS"; (2) Defendant "intends to phase out its use of the

7

XLS mark as soon as practicable and within one year of today's date" (i.e., by October 8, 2019); and (3) the domain name <xlspartners.com> "will not be transferred to" Plaintiff. *See* Exhibit F.

28. One week later, the TTAB issued an Order sustaining and terminating the opposition proceeding, and the XLS Application was deemed abandoned as of October 15, 2018.

29. Since the XLS Application was deemed abandoned, the parties have engaged in further discussions towards attempting to fully resolve the dispute—although Defendant appears to be less motivated to achieve that result. First, despite noting its alleged "intent" to "phase out its use of the XLS mark" by October 8, 2019 at the latest, Defendant has refused to *agree* to cease using that XLS mark by any date certain. For example, Plaintiff will not allow Defendant to continue using the XLS mark for a full year, particularly because Plaintiff is already aware of instances of actual confusion in the marketplace. Despite Plaintiff's concerns, however, Defendant remains unwilling to agree to cease usage of the XLS mark until at least March 31, 2019, and Defendant remains unwilling to commit any such agreement to writing.

30. Second, Defendant has refused to agree to any transfer or future limitations on its registration and/or use of the domain name <xlspartners.com>. As noted above, Defendant has refused to assign that domain name to Plaintiff in its letter dated October 8, 2018. In subsequent discussions, however, Defendant has not agreed to stop using that domain name altogether, even though it will have no lawful reason to do so after the unidentified date upon which Defendant agrees to stop using the XLS mark. Since Defendant has refused to stop using the domain name <xlspartners.com>, on information and belief, Defendant intends to continue using the domain name to attempt to divert website visitors who may intend to search for or visit a website associated with XMS, and not with XLS.

31. Third, and perhaps most importantly, while Plaintiff has proposed a reasonable Settlement Agreement that addresses the need for express terms under which Defendant will stop its use of the XLS mark, and associated future limitations on its use, Defendant has steadfastly refused to enter into ***any*** written settlement agreement. *See* Exhibit G (noting that XLS "does not believe a written settlement agreement is warranted"). Notably, in this December 7 letter in which Defendant took the position, in writing, that it will not enter into any written settlement agreement, Defendant also noted that it only "intends" to cease using the XLS mark by March 31, 2019. Of course, since Defendant has refused to enter into any written agreements or actually commit to ceasing usage of the XLS mark by March 31, 2019, Plaintiff has no assurance that its trademark rights will not continue to be infringed for the indefinite future.

32. In short, Defendant continues to refuse to enter into any form of settlement agreement to memorialize any terms to resolve this matter. Defendant has likewise refused to make any firm commitment to ceasing usage of the mark XLS or any confusingly similar mark, or to accept any limitations on its winddown usage of the XLS mark (assuming it is even winding down its usage of the XLS mark), and continues to refuse to halt the use of its infringing <xlspartners.com> domain name, in which the accused mark continues to be featured.

33. Upon information and belief, at the time Defendant first considered adopting the XLS mark and/or filed the XLS Application, Applicant had constructive knowledge of XMS's rights, by virtue of the registration of the XMS CAPITAL Registration on the Principal Register. Further, at that time, Applicant is believed to have had actual knowledge of XMS's rights in the XMS Marks in connection with the XMS Services.

34. Applicant's website features an XLS logo that is remarkably similar to the identity portion of the XMS logo shown above, as demonstrated below:

9

| The XMS Logo Identity | The XLS Logo |
|---|---|
| XMS PARTNERS | XLS PARTNERS |

## COUNT I: SERVICE MARK INFRINGEMENT UNDER 15 U.S.C. § 1114(a)

35. Plaintiff hereby adopts and reavers each of the allegations contained in Paragraphs 1 through 34 above, inclusive.

36. Defendant has committed federal service mark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37. Defendant's earliest use of the XLS mark, whether counted via the February 2018 filing date for the XLS Application or the eventual claimed first date of use for the XLS Application, June 1, 2018, occurred long after XMS's first use of the XMS Marks for the XMS Services, long after the USPTO issued the XMS Registration—and long after Defendant's actual and constructive knowledge of Plaintiff's use of its XMS marks.

38. Plaintiff is the owner of all right, title, interest, and the goodwill in and to its registered XMS CAPITAL service mark, as reflected in the XMS Registration, U.S. Reg. No. 5,108,388. Plaintiff's service mark rights in the XMS Registration are valid and enforceable. Plaintiff's distinctive XMS CAPITAL service mark has acted and continues to act as a source indicator in the marketplace for the XMS Services. Further, the XMS CAPITAL mark is recognized by consumers as an indicator of the high-quality services associated with the XMS CAPITAL brand, and as a result of the substantial effort of Plaintiff in marketing the XMS Services under that brand in the United States.

39. The marks XLS and XLS PARTNERS are confusingly similar in sight, sound, connotation and commercial impression to the XMS CAPITAL service mark, particularly in view of the descriptive nature of the trailing term "CAPITAL" in the XMS CAPITAL Registration.

40. The XLS Services are similar and highly related to the XMS Services. Plaintiff and Defendant both offer advice and consulting in the field of mergers and acquisitions and investment banking services.

41. Defendant's use of the marks XLS and XLS PARTNERS is likely to result in confusion with Plaintiff's registered XMS CAPITAL service mark.

42. Defendant's use of the marks XLS and XLS PARTNERS has already resulted in actual instances of confusion with Plaintiff's registered XMS CAPITAL service mark.

43. Defendant's use of the mark XLS or the mark XLS PARTNERS for the XLS Services is likely to cause confusion in the minds of the public, and is likely to deceive consumers as to the source or origin of those services, and is likely to mislead consumers, all to XMS's damage. The public, upon seeing the XLS Marks in connection with the XLS Services, would be deceived or confused into believing that such services originate, are affiliated with, or are endorsed by XMS.

44. On information and belief, Defendant has acted and continues to act with knowledge of Plaintiff's service mark rights, and has thus willfully infringed upon Plaintiff's rights in and to its distinctive XMS CAPITAL mark.

45. By reason and as a direct result of these acts of unfair competition and service mark infringement by Defendant, Plaintiff has suffered great and irreparable damage, the full extent of which is currently unknown, while Defendant is positioned for unjust enrichment on

account of Plaintiff's goodwill and reputation, at Plaintiff's substantial expense. Plaintiff will continue to suffer great and irreparable damage unless and until Defendant is enjoined by this Court.

### COUNT II: SERVICE MARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

46. Plaintiff hereby adopts and reavers each of the allegations contained in Paragraphs 1 through 45 above, inclusive.

47. Defendant has committed federal service mark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. Plaintiff is the owner of all right, title, interest and goodwill in and to its unregistered service marks XMS and XMS CAPITAL PARTNERS, which are used in association with the XMS Services. Plaintiff's service mark rights in the unregistered service marks XMS and XMS CAPITAL PARTNERS are valid and enforceable. Plaintiff's distinctive XMS and XMS CAPITAL PARTNERS marks have acted, and continue to act, as source indicators in the marketplace for the XMS Services. Further, the XMS mark is recognized by consumers as an indicator of the high quality services associated with the XMS and XMS CAPITAL PARTNERS marks, and as a result of the substantial effort of Plaintiff in marketing the XMS Services under those marks in the United States.

49. The marks XLS and XLS PARTNERS are confusingly similar in sight, sound, connotation and commercial impression to Plaintiff's unregistered XMS and XMS CAPITAL PARTNERS service marks.

50. The XLS Services are similar and highly related to the XMS Services. Plaintiff and Defendant each offer advice and consulting in the field of mergers and acquisitions and investment banking services.

51. Defendant's use of the marks XLS and XLS PARTNERS is likely to result in confusion with Plaintiff's unregistered XMS and XMS CAPITAL PARTNERS service marks.

52. Defendant's use of the marks XLS and XLS PARTNERS has already resulted in actual instances of confusion with Plaintiff's unregistered XMS and XMS CAPITAL PARTNERS service marks.

53. Defendant's use of the mark XLS or the mark XLS PARTNERS for the XLS Services is likely to cause confusion in the minds of the public, and is likely to deceive consumers as to the source or origin of those services, and is likely to mislead consumers, all to XMS's damage. The public, upon seeing the XLS Mark in connection with the XLS Services, would be deceived or confused into believing that such services originate, are affiliated with, or are endorsed by XMS.

54. On information and belief, Defendant has acted and continues to act with knowledge of Plaintiff's service mark rights, and has thus willfully infringed upon Plaintiff's rights in and to its distinctive XMS and XMS CAPITAL PARTNERS marks.

55. By reason and as a direct result of these acts of unfair competition and service mark infringement by Defendant, Plaintiff has suffered great and irreparable damage, the full extent of which is currently unknown, while Defendant is positioned for unjust enrichment on account of Plaintiff's goodwill and reputation, at Plaintiff's substantial expense. Plaintiff will continue to suffer great and irreparable damage unless and until Defendant is enjoined by this Court.

**COUNT III: CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)**

56. Plaintiff hereby adopts and reavers each of the allegations contained in Paragraphs 1 through 55 above, inclusive.

57. Defendant has committed cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

58. Plaintiff is the owner of all right, title, interest and goodwill in and to its registered XMS CAPITAL service mark, as reflected in the XMS CAPITAL Registration, U.S. Reg. No. 5,108,388. The XMS CAPITAL service mark was registered, and was distinctive at the time that Defendant registered the domain name <xlspartners.com> (the "XLS Domain Name").

59. Plaintiff is also the owner of all right, title, interest and goodwill in and to its unregistered XMS and XMS CAPITAL PARTNERS service marks. Those two service marks were distinctive at the time that Defendant registered the XLS Domain Name.

60. Defendant's XLS Domain Name contains the wording "xlspartners," a character string that is identical or confusingly similar to Plaintiff's registered XMS CAPITAL service mark.

61. Defendant's XLS Domain Name contains the wording "xlspartners," a character string that is identical or confusingly similar to Plaintiff's unregistered XMS and XMS CAPITAL PARTNERS service marks.

62. Defendant has a bad faith intent to profit from Plaintiff's XMS, XMS CAPITAL PARTNERS and XMS CAPITAL service marks—by continuing to use the XLS domain name.

63. Because the character string "XLS" differs from the character string "XMS" by only one letter. Each of those two letters ("L" and "M") utilize a similar phonetic sound and are

located near each other on a standard typing keyboard. As such, it is possible and indeed likely that one or more consumers would inadvertently type "XLS" when intending to type "XMS" in the URL box of their web browser.

64. By reason and as a direct result of these acts of cybersquatting by Defendant, Plaintiff has suffered great and irreparable damage, the full extent of which is currently unknown, while Defendant is positioned for unjust enrichment on account of Plaintiff's goodwill and reputation, at Plaintiff's substantial expense. Plaintiff will continue to suffer great and irreparable damage unless and until Defendant is enjoined by this Court.

### COUNT IV: ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT UNDER 815 ILCS 510

65. Plaintiff hereby adopts and reavers each of the allegations contained in Paragraphs 1 through 64 above, inclusive.

66. On information and belief, XLS's acts described herein have been made with the result of causing a likelihood of confusion, or of a misunderstanding as to the source, sponsorship, or approval of the XLS services.

67. Defendant's acts constitute a violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510.

68. Upon information and belief, Defendant has willfully engaged in the deceptive trade practices complained of herein.

69. Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

70. Defendant's statutory violations and other wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, and injury to its reputation.

71. Defendant has realized revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled.

72. Plaintiff has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

73. Plaintiff has no adequate remedy at law for the wrongful actions of Defendant.

**COUNT V: UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW**

74. Plaintiff hereby adopts and reavers each of the allegations contained in Paragraphs 1 through 73 above, inclusive.

75. On information and belief, XLS's acts described herein have been made with the result of causing a likelihood of confusion, or of a misunderstanding as to the source, sponsorship, or approval of the XLS services, and with the result of unjustly enriching Defendant at the expense of Plaintiff.

76. Defendant's acts constitute unfair competition under Illinois common law.

77. Defendant's aforesaid acts have caused and, unless such acts are restrained by this Court, will continue to cause great and irreparable injury to Plaintiff.

78. Defendant's wrongful acts have injured and threaten to continue to injure Plaintiff, including loss of customers, dilution of goodwill, confusion of existing and potential customers, and injury to its reputation.

79. Defendant has realized revenue and profits by virtue of its wrongful acts that it otherwise would not have obtained and to which it is not entitled. As a result of this, Defendant has been unjustly enriched by its unlawful conduct.

80. Plaintiff has also been injured and will continue to incur attorneys' fees and costs in bringing the present action.

81. Plaintiff has no adequate remedy at law for the wrongful actions of Defendant.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

A. That this Court find that Plaintiff owns valid and enforceable service mark rights in its registered XMS service mark;

B. That this Court find that Plaintiff owns valid and enforceable service mark rights in its unregistered XMS and XMS CAPITAL PARTNERS service marks;

C. That this Court find that Defendant has unlawfully, and without authorization, infringed upon Plaintiff's service mark(s), and has engaged in unfair competition, both in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), *et seq.*, and has done so willfully;

D. That this Court find that Defendant has unlawfully committed cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d);

E. That this Court find that Defendant is in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS 510 and has unfairly competed under Illinois common law, and that the violations have been performed willfully;

F. That Defendant and its officers, agents, servants, employees, attorneys, and all other persons in active concert and/or participation with it who receive notice, be preliminarily and permanently enjoined and restrained from:

      i.      Infringement of Plaintiff's service marks;

      ii.      Engaging in deceptive trade practices and unfair competition;

      iii.      Cybersquatting on the XLS Domain Name and any other domain name incorporating an "xls" or similar element;

      iv.      Using Plaintiff's XMS, XMS CAPITAL and XMS CAPITAL PARTNERS service marks in United States commerce.

G.      That an accounting be held and judgment rendered for damages sustained by Plaintiff on account of Defendant's service mark infringement and unfair competition;

H.      That an accounting be held and judgment rendered for damages sustained by Plaintiff on account of Defendant's cybersquatting;

I.      That an accounting be held and judgment rendered for damages sustained by Plaintiff on account of Defendant's engaging in deceptive trade practices;

J.      That this Court assess pre-judgment and post-judgment interest against Defendant for the amount awarded to Plaintiff; and

K.      That this Court award reasonable attorney fees, taxable costs and such other and further relief to Plaintiff as deemed just and lawful.

## **JURY DEMAND**

Plaintiff requests a trial by jury as to all issues triable to a jury.

      Respectfully submitted,

      XMS CAPITAL PARTNERS, LLC

Dated: December 31, 2018      By:   /s/Richard D. Harris
      Richard D. Harris, Esq.
      Barry R. Horwitz, Esq.
      GREENBERG TRAURIG, LLP

        77 West Wacker Drive, Suite 3100
        Chicago, Illinois  60601
        Telephone:  312-456-8400
        Facsimile:  312-456-8435

        Counsel for Plaintiff XMS CAPITAL
        PARTNERS, LLC